IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SEVIER COUNTY BANK, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS <br><br><br><br> Case No. 2:10-CV-841 TS |

Before the Court is Defendant Sevier County Bank's ("Sevier") Motion to Dismiss for lack of personal jurisdiction.[1]  Sevier alleges that this case should be dismissed under Fed.R.Civ.P. 12(b)(2) because this Court lacks personal jurisdiction over Sevier.  Sevier argues that it lacks sufficient minimum contacts with Utah for it to reasonably have anticipated being haled into Court there and that this Court's exercise of jurisdiction over Sevier would be unreasonable.  After reviewing the parties' respective memoranda, the Court enters the following Order.

---

[1]Docket No. 16.

1

## I. BACKGROUND

Sevier is a Tennessee corporation and state chartered bank with its principal place of business at 1111 Main Street, Sevierville, Tennessee. Sevier County Bank has a total of seven branch offices, all of which are located in Tennessee.

Plaintiff American Express Travel Related Services Company, Inc. ("American Express") is a New York corporation with a place of business in Salt Lake City, Utah.

On or around June 28, 2007, GE Capital—a Utah Corporation—entered into a purchasing account program agreement (the "GTP Agreement") with Group Travel Planet, LLC ("GTP")—an Ohio Corporation. As part of the GTP Agreement, GTP was required to provide GE Capital with a letter of credit.

Upon request from its customer GTP, Sevier issued a letter of credit in favor of GE Capital in May 2008 (the "May 2008 Letter of Credit"). Under the letter's terms, GE Capital could draw on the letter by presenting a scripted statement to any of Sevier's locations. Sevier alleges, and American Express does not dispute, that GTP negotiated the transaction involving the May 2008 Letter of Credit and the terms of the instrument with GE Capital. American Express notes, however, that Sevier knew that GE Capital was a Utah corporation and Sevier sent the letter of credit to GE Capital in Utah.

In 2008, GE Capital entered into an Asset Purchase Agreement with American Express. American Express alleges that the Asset Purchase Agreement assigned to American Express all of GE Capital's account receivables and causes of actions against third-parties—which American Express argues includes the right to draw on the May 2008 Letter of Credit.

On March 24, 2009, Jurrel Stapleton, vice president of Sevier, sent a letter to GE Capital in Utah which stated that Sevier will be "cancelling the above-mentioned letter of credit [May 2008 Letter of Credit] upon its expiration date of May 30, 2009. This letter of credit will not be renewed beyond May 30, 2009."[2]

On May 20, 2009, GTP filed for bankruptcy. On May 22, 2009, GE Capital sent a letter to Sevier's main office in Sevierville, Tennessee and requested a partial draw on the May 2008 Letter of Credit. Thereafter,[3] Christina Merrill, a senior credit analyst from GE Capital in Utah, contacted Jurrel Stapleton of Sevier by telephone regarding GE Capital's request to draw on the May 2008 Letter of Credit.

On May 29, 2009, Matthew Anderson, vice president of GE Capital in Utah sent a letter to Jurrel Stapleton of Sevier disputing Sevier's March 24, 2009 cancellation letter. On June 17, 2009, counsel for GE Capital in Utah sent a letter to Sevier renewing its request for a draw on the May 2008 Letter of Credit.

On April 8, 2010, GE Capital and American Express signed a document entitled Letter of Credit Assignment Agreement, which purports to explicitly transfer GE Capital's rights under the

---

[2]Docket No. 20, Ex. C.

[3]Christina Merrill's declaration filed in support of American Express's Opposition gives the date of this conversation as May 21, 2009. This date is likely in error, however, as there is no evidence of a request by GE Capital to draw upon the May 2008 letter of credit prior to the May 22, 2009 letter. Thus, this conversation likely occurred sometime after May 22, 2009. Indeed, in Peter Ingman's declaration, he describes Merrill's conversation as occurring after the May 22, 2009 letter.

May 2008 Letter of Credit to American Express. American Express filed this suit on August 24, 2010, which attempts to enforce GE Capital's rights under the May 2008 Letter of Credit.

II. LEGAL STANDARD

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[4] As Utah's long-arm statute is coterminous with the due process clause,[5] the Court will focus its inquiry on whether maintenance of the suit would offend the due process clause of the Fourteenth Amendment.[6]

Under the due process clause:

Our personal jurisdiction analysis involves a two-step inquiry. First, we ask whether the nonresident defendant has minimum contacts with the forum state such that he should reasonably anticipate being haled into court there. If the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.[7]

---

[4]*Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995).

[5]*MFS Series Trust III v. Grainger*, 96 P.3d 927, 932 (Utah 2004) (noting that Utah's long-arm statute "allows the exercise of jurisdiction over nonresident defendants to the 'fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Consitution'" (quoting Utah Code Ann. § 78-27-22 (2002))).

[6]*See Shanks v. Westland Equip. & Parts Co.*, 668 F.2d 1165, 1167 (10th Cir. 1982).

[7]*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008) (internal quotation marks and citations omitted).

Defendant will have had sufficient minimum contacts with the forum state if it can be said that the defendant, based on its activities in the forum state, "should reasonably anticipate being haled into court there."[8] In other words, "[e]stablishment of minimum contacts with the forum state requires a showing that the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum state.'"[9] This standard ensures that a defendant will not be subject to the laws of a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."[10]

This minimum contacts standard may be met in either of two ways: specific jurisdiction or general jurisdiction.[11] As there is no allegation that general jurisdiction would be proper in this case, the Court will confine its discussion to the standards for specific jurisdiction. "Specific jurisdiction may be exercised where the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum."[12]

---

[8] *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).

[9] *AST Sports Sci., Inc.*, 514 F.3d at 1057 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[10] *Benally v. Amon Carter Museum of W. Art*, 858 F.2d 618, 625 (10th Cir. 1988).

[11] *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532-33 (10th Cir. 1996).

[12] *In re Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir.1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Even if the Court finds that Defendant has had sufficient minimum contacts with the forum state, the exercise of jurisdiction must "not offend traditional notions of fair play and substantial justice."[13] "This inquiry requires a determination of whether the district court's exercise of personal jurisdiction over defendant is reasonable in light of the circumstances surrounding the case."[14]

In resolving challenges to this Court's personal jurisdiction, "[t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant."[15] As the Tenth Circuit has set forth previously, "[w]hether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction is decided on the particular facts of each case."[16]

> However, in the preliminary stages of litigation, the plaintiff's burden is light. Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. When evaluating the prima facie case, the court is bound to resolve all factual disputes in favor of the plaintiff in determining whether he has made the requisite showing.[17]

---

[13] *AST Sports Science, Inc.,* 514 F.3d at 1057.

[14] *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000).

[15] *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984).

[16] *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 455 (10th Cir. 1996).

[17] *AST Sports Sci., Inc.*, 514 F.3d at 1056-57.

III. DISCUSSION

American Express asserts that personal jurisdiction is proper in this action because Sevier has had many contacts with Utah. Specifically, American Express alleges that Sevier purposefully established a business relationship in Utah by entering into a "letter of credit contract"[18] with GE Capital and communicating with GE Capital employees by phone and written correspondence in Utah concerning this letter of credit.

The crux of American Express's argument turns on its contention that Sevier entered into a contractual relationship with GE Capital when it issued the May 2008 Letter of Credit. American Express's assertion that Sevier and GE Capital have a contractual relationship, however, is inconsistent with the structure of the May 2008 Letter of Credit transaction. GTP—a customer of Sevier's—obtained the letter of credit from Sevier. Thus, Sevier's contract was with GTP, while GE Capital and through assignment, American Express, are beneficiaries of this contractual relationship. As the Eighth Circuit persuasively explained,

> When [Sevier] issued its letter of credit, it did not *make* a contract with [GE Capital], it *performed* a contract with its [Ohio] customer, [GTP]. The identity and location of [GTP]'s beneficiary was of little if any concern to [Sevier], because it looked to [GTP] for both its letter of credit fee and reimbursement of any payment [Sevier] might make under the credit. True, the letter of credit created a separate, conditional obligation running from [Sevier] to [GE Capital and through assignment, American Express] as beneficiary. But that bare letter of credit obligation, while contractual in nature, was not the making of a contract with [GE Capital].[19]

---

[18] Docket No. 18.

[19] *Moog World Trade Corp. v. Bancomer, S.A.*, 90 F.3d 1382, 1386 (8th Cir. 1996).

In light of this discussion, the Court finds that American Express's contention that Sevier entered into a contract in Utah by issuing the May 2008 Letter of Credit to a Utah entity fails as a matter of law.

American Express is thus left with the argument that Sevier's issuance of the May 2008 Letter of Credit and its communications to American Express concerning the letter of credit are sufficient minimum contacts, in and of themselves, to satisfy due process. The Tenth Circuit, however, has explicitly held that "it is unfair to burden an issuing bank with having to defend litigation over a letter of credit in any state in which the bank could reasonably expect the credit to be used."[20] Similar to *Leney*, the pleadings here do not indicate that the parties expected any dispute over the letter of credit to be resolved in Utah.[21] As in *Leney*, American Express did not ask for a letter of credit on a bank in the forum state, American Express had no direct dealings with Sevier with respect to the letter's issuance, and the letter was obtained from Sevier by its non-forum state customer, GTP.[22] In short, prior to the issuance of the letter of credit, Sevier did nothing in Utah except mail the May 2008 Letter of Credit to Utah.

The Court finds *Leney* controlling in this matter. The only alleged factual difference between the present action and *Leney* noted by American Express is that the defendant bank in *Leney* had "no direct dealings" between the bank and the beneficiary of the letter of credit. American Express alleges that this is distinguishable from the present action because Sevier had

---

[20] *Leney v. Plum Grove Bank*, 670 F.2d 878, 881 (10th Cir. 1982).

[21] *Id.* at 880.

[22] *Id.*

8

several communications with American Express and/or GE Capital. Of the several communications identified by American Express, however, only two were instigated by Sevier: the dispatch of the May 2008 Letter of Credit and the dispatch of the March 2009 cancellation letter. All other identified communications were either instigated by American Express and/or GE Capital or did not involve Sevier.

In support of American Express's argument that these isolated communications give rise to personal jurisdiction over Sevier, American Express cites to two cases: *TFG-New Jersey, L.P. v. Mantiff Jackson Naional. Hospitality, LLC*[23] and *Pro Axess, Inc. v. Orlux Distribution, Inc.*[24] These cases, however, are both factually distinguishable from the present action. Importantly, neither of these cases involved a dispute between an issuer and a beneficiary of a letter of credit. Moreover, the communications in the cited cases were merely "additional evidence" of a contractual or business relationship among the parties.[25] Thus, these communications only gained relevance in the larger context of the parties' relationships. Here, no such larger context exists. Sevier's only dealings in the forum state and with American Express include the dispatch of two mailings: (1) a letter of credit to a Utah entity and (2) a letter to that same Utah entity, a year later, allegedly cancelling the letter of credit. Such contact is insufficient to satisfy the demands of due process.

---

[23] 2008 WL 4755769 (D. Utah Oct. 28, 2008).

[24] 428 F.3d 1270 (10th Cir. 2005).

[25] *See id.* at 1278.

Based on the foregoing, the Court finds that American Express has failed to establish a prima facie case for personal jurisdiction. The facts presented by Plaintiff, taken as true for purposes of this motion, only assert isolated and sporadic contacts by Sevier with the forum state. These contacts fail to establish that Sevier purposefully availed itself of the privilege of conducting business in Utah or that Sevier could have reasonably anticipated being haled into court in Utah. To hold otherwise would effectively "subject any bank that issues a letter of credit to suit in any state in which the bank could expect the credit to be used to buy goods or real estate."[26] Such a holding would violate Sevier's right to due process.[27]

Because American Express has failed to establish a prima facie case for personal jurisdiction, as to whether the exercise of jurisdiction would be reasonable in the present action, the Court need only reassert the Tenth Circuit's finding in *Leney* that "it is unfair to burden an issuing bank with having to defend litigation over a letter of credit in any state in which the bank could reasonably expect the credit to be used."[28] In light of this inequity, the Court concludes that the exercise of jurisdiction in the present action would offend the traditional notions of fair play and substantial justice.

---

[26] *Leney*, 670 F.2d at 881.

[27] *Id.* (concluding that the assertion of jurisdiction over an issuing bank in the forum where the letter of credit was dispatched violates the issuing bank's right to due process).

[28] *Id.* at 881.

## IV. CONCLUSION

Based on the foregoing, it is therefore

ORDERED Defendant Sevier County Bank's Motion to Dismiss (Docket No. 16) is GRANTED. The hearing set for February 24, 2011, is VACATED.

The Clerk of the Court is directed to close this case forthwith.

DATED   February 17, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge